EWELL E. AND SARA E. WEEKS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Weeks v. Commissioner
Docket No. 10013-83.
United States Tax Court
T.C. Memo 1985-417; 1985 Tax Ct. Memo LEXIS 211; 50 T.C.M. (CCH) 750; T.C.M. (RIA) 85417; August 13, 1985. *211 Held: Petitioner's employment as a journeyman steamfitter was indefinite. Thus, a deduction for expenses to travel to and from work is not allowable under section 162(a)(2). Ewell E. Weeks, pro se. Helen Theo, for the respondent. WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION WHITAKER, Judge: Respondent determined a deficiency in petitioners' income tax of $1,315 and an addition to tax under section 6653(a) [1] of $65.75 for 1980. After concessions, the only issue for *212 decision is whether petitioners are allowed to deduct expenses incurred in 1980 for travel to and from work under section 162(a)(2). FINDINGS OF FACT Some of the facts have been stipulated. Petitioners resided in Albertville, Alabama, when they filed the petition in this case and during the year in issue. Petitioner Ewell E. Weeks (petitioner) is a steamfitter by trade. On July 26, 1979, petitioner was reemployed (following a voluntary resignation) as a journeyman steamfitter for the Tennessee Valley Authority (TVA) at the Bellefonte Nuclear Project (Bellefonte project) in Hollywood, Alabama. [2]
When petitioner was reemployed by TVA on this project on July 26, 1979, his type of appointment was a Trades and Labor Temporary Construction Hourly, with no termination date. Workers under this appointment were employed until their *213 services were no longer needed. The word "temporary" was used by TVA to distinguish hourly workers from salaried workers. Petitioner at the time of trial was still so employed. The requirement at the Bellefonte project for steamfitters for the year 1980, as projected in 1979, was 800 although 1,416 were actually employed. The requirement for the year 1981, as projected in 1980, was 146 although 1,506 were actually employed. The 1982 projection made in 1981 was 1,050 and 1,075 were actually employed. During 1980, 13 journeyman steamfitters were laid off; during 1981, none were laid off; and during 1982 101 were laid off. We take judicial notice of the following facts found in , which also involved the Bellefonte project. The Bellefonte project in 1978 had a projected completion date of 1983. This completion was revised as follows: [3]
Time of Revised Projection
Revised Projected Completion Date
April 1979
August 1985
May 1980
August 1986
Housing in the Bellefonte project *214 area for workmen was critically short during this period. During 1980, petitioner drove from his residence in Albertville, Alabama, to the Bellefonte project on a daily basis. The distance between the two is 53 miles and thus, a round trip is 106 miles. On their return for the 1980 taxable year, petitioners claimed automobile expenses as an employee business expense deduction in the amount of $4,265. This deduction was disallowed by respondent. OPINION Respondent argues that petitioner is not entitled to deduct the expenses at issue because (1) the expenses were not incurred "while away from home"; (2) petitioner's residence in Alabama was maintained for personal rather than business reasons; and (3) petitioner's employment by TVA was indefinite rather than temporary. Personal expenses are ordinarily not deductible. Section 262. Section 162(a)(2), however, allows the taxpayer to deduct certain expenses if they are traveling expenses paid or incurred while "away from home in the pursuit of a trade or business" if he can establish they were: (1) Reasonable and necessary traveling expenses; (2) incurred while "away from home"; and (3) incurred in pursuit of a trade or business. *215 ; . This Court has held that a taxpayer's "home" for the purposes of section 162(a)(2) is the vicinity of his principal place of business whenever his personal residence is not located in the same vicinity. ; . There is however an exception to this rule when a taxpayer with a well-established tax home accepts temporary employment as opposed to indefinite or indeterminate employment elsewhere. In this context, temporary employment means the sort of employment in which termination within a short period of time could be logically expected and foreseen. , affg. a Memorandum Opinion of this Court; . See also . On the other hand, whenever termination of employment cannot be expected or foreseen within a fixed or reasonably short period of time, *216 the taxpayer's tax home shifts to such place of employment so that he cannot satisfy the "away from home" requirement. . Furthermore, when employment which was temporary in contemplation at the date of its commencement becomes indeterminate in duration, then "the situs of such employment for purposes of the statute becomes the taxpayer's home." . Employment may change from temporary to indefinite due to changed circumstances or simply by the passage of time. . Whether a taxpayer's employment is "temporary" as opposed to "indefinite," "substantial," or "permanent" is a question of fact. ; ;Among the relevant factors to be considered is whether the taxpayer logically expected that the employment would last for a short period of time or that the job itself would not extend beyond a reasonably brief duration. *217 The burden of proving that his employment was temporary rests on petitioners. ; Rule 142(a). In the present case it is clear that during 1980 termination of petitioner's employment on the Bellefonte project could not be logically expected or foreseen within a fixed or reasonably short period of time. The contract of employment provided that petitioner would be employed until his services were no longer needed. The fact that petitioner's contract stated that he was a temporary employee is not determinative of the issue herein. ; . We understand the confusion caused by the fact that the meaning of the word "temporary" in petitioner's work contract is different from the meaning of the word "temporary" as a term of art for business expense purposes under section 162. In view of the extensive judicial precedent on this tax issue, petitioners must look to the Congress for establishment of a different rule. The projected completion date for the Bellefonte project was continuously revised and extended into *218 the future. There was no reason to believe during 1980 that the job would not extend indefinitely into the future. The fact that a relatively small percentage of layoffs of steamfitters occurred during the year in issue does not lead us to conclude that petitioner's job would terminate within a short period of time by reason of being laid off. Petitioner in fact remains employed at this plant as of the date of trial. Beginning in 1978 and up through the year at issue, the number of steamfitter positions increased. Neither is it relevant that it may not have been reasonable for petitioner to have acquired a permanent residence in the area of the Bellefonte project if one could have been located. It is clear from the record that during 1980 petitioner's employment was indefinite. Petitioner has not met the "away from home" requirement; hence petitioner's expenses are not deductible under section 162(a)(2). [4]
*219 Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, and all rule references are to the Tax Court Rules of Practice and Procedure.↩
2. This is one of a group of six cases involving hourly workmen at the Bellefonte project, all of whose cases were consolidated for trial only.↩
3. Although the completion dates have been revised, no reactors have been deferred or cancelled at the Bellefonte plant.↩
4. Our attention was called to two summary opinions, Cook v. Commissioner, T.C. Summary Opinion 1980-752, and Atnip v. Commissioner,↩ T.C. Summary Opinion 1980-761, which petitioner believes to have involved employment on the Bellefonte project. In each case the taxpayers were allowed travel expense deductions. Neither opinion sets forth the facts of this particular case so we cannot compare those cases to any of this group of six cases. However, those were summary opinions and they are not precedent for any other case, although we of course recognize that all of our opinions should be consistent.